IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDGAR ORLANDO BARBOSA, § | | |
|     Petitioner § | | |
| § | | |
| VS. § | C.A. NO. C-05-240 | |
| § | | |
| DOUG DRETKE, DIRECTOR, § | | |
| TEXAS DEPARTMENT OF CRIMINAL § | | |
| JUSTICE–INSTITUTIONAL DIVISION, § | | |
|     Respondent § | | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the Rufe Jordan Unit in Pampa, Texas.  Petitioner was convicted in Cameron County, Texas of the crime for which he is incarcerated and the events about which he complains occurred at the McConnell Unit in Beeville, Texas.  Proceeding *pro se*, petitioner filed this habeas corpus petition pursuant to 28 U.S.C. §§ 2241 and 2254 on May 6, 2005 (D.E. 1).

Petitioner makes the following due process claims in reference to a disciplinary hearing which resulted in the imposition of punishment:  (1) He was denied effective assistance of counsel at the hearing; (2) The hearing officer allowed controversial testimony to be presented at the hearing; (3) One of the officers who testified was mistaken about the date on which the incident occurred and his testimony was otherwise not credible;  (4) The evidence was factually and legally insufficient to support a finding of guilt and (5) The charging officer committed an act of "reckless endangerment" by having petitioner and other offenders strip searched only a few feet from a busy highway.  Respondent filed a motion for summary judgment on August 9, 2005 to which petitioner responded on August 31, 2005 (D.E. 7, 10).

**JURISDICTION**

Petitioner was convicted in the Southern District of Texas, giving this court jurisdiction over his petition. 28 U.S.C. § 2241(d).

**BACKGROUND**

Petitioner currently is serving an eight-year sentence for robbery, a second degree felony (D.E. 8, Commitment Inquiry).[1] He does not complain about his holding conviction, but challenges the results of disciplinary case number 20050076469[2], where he was accused and found guilty of possessing tobacco (D.E. 8, Disp. Hearing Recs., p. 1).

In the offense report, the charging officer, James Dunn, wrote that while petitioner was mowing and detailing ditches on Highway 202, Dunn saw him stop mowing and bend down behind a three foot by four foot cement block and grab two brown bags. Dunn saw petitioner hand the bags to inmate Tomas Solis, the tractor driver. One brown bag was found and it had three packages of tobacco in it (D.E. 8, Disp. Hearing Recs., p. 6). At the hearing, Dunn testified that when he searched the area before the inmates began cleaning it up he found a package wrapped up and taped. He left the package there and saw Barbosa pick it up and hand it to Solis and then saw Solis throw it over a fence. In addition to the tobacco, the package contained a lighter and some rolling papers. Another brown package was found under some leaves. Another officer, Villarreal, corroborated Dunn's account (D.E. 8, Disp. Hearing Recs., p. 3).

---

[1] All of the evidence submitted in support of respondent's motion for summary judgment is located at D.E. 8.

[2] In his complaint, petitioner asserts that he is challenging disciplinary case number 2005576469, but it appears that he made a mistake in when copying the number. The mistake is not material to the outcome of the case.

During the pre-hearing investigation and at the hearing, petitioner maintained that the bag was found in a private fenced area and that he never was in possession of any contraband (D.E. 8, Disp. Hrg. Recs., pp. 7, 9). Petitioner submitted statements from three inmate witnesses who were working on the side of the road, two of whom said that the officers searched inmates but did not find anything. They saw Officer Villarreal spot the package on the other side of the fence and squeeze through the fence to get it. The third offender did not see any package or tobacco (D.E. 8, Disp. Hrg. Recs., pp. 12-14).

Petitioner was found guilty based on the offense report and the testimony of the two officers at the hearing. He was punished with the loss of 45 days of commissary and recreation privileges, solitary confinement for 15 days, a reduction in line class from S2 to L1 and the loss of 90 days of good time (D.E. 8, Disp. Hrg. Recs., p. 1).

Petitioner filed a Step 1 grievance on November 19, 2004 complaining about being found guilty of being in possession of contraband and recounting his version of events. He received a response from Warden Castillo affirming the disciplinary decision (D.E. 8, Disp. Grievance Recs., pp. 1-2). Petitioner filed a Step 2 grievance on January 7, 2005, making essentially the same arguments he made in his Step 1 grievance. He received a response from T. Roddey, who told him that the disciplinary charge was appropriate and the verdict was supported by a preponderance of the evidence (D.E. 8, Disp. Grievance Recs., pp. 3-4).

In his motion for summary judgment, respondent argues that petitioner is not entitled to relief because he is ineligible for mandatory supervision. Respondent also argues that petitioner did not exhaust all of his claims in TDCJ-ID's administrative appeals process and that the claims are now procedurally defaulted. In addition, respondent argues that petitioner's right to due process was not violated.

## APPLICABLE LAW

**A. Exhaustion of Administrative Remedies**

Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state.  28 U.S.C. § 2254(b)(1).  "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated."  Shute v. State of Texas, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted).  But, because Texas state courts do not review claims of lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court.  Ex Parte Palomo, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); Ex parte Brager, 704 S.W.2d 46 (Tex. Crim. App. 1985).  The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court.  Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998).  Notwithstanding a petitioner's failure to exhaust state remedies, an application for a writ of habeas corpus may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Respondent argues that petitioner failed to raise all of the issues in his grievances that he raises in his federal court complaint.  Specifically, respondent argues that petitioner failed to argue that he received ineffective assistance of counsel; that the hearing officer allowed controversial testimony, and that the charging officer recklessly endangered petitioner and other offenders by strip searching them close to a highway.

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit discussed how much detail is necessary in a prison grievance form.  The Court noted that it has given relatively little guidance on what a prisoner must say in a grievance to properly exhaust his claims and added that as

a general matter, courts typically use a standard according to which a grievance should give prison officials fair notice of the problem that will form the basis of the prisoner's suit.

> In deciding how much detail is required in a given case, we believe that a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials time and opportunity to address complaints internally. Thus, a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit.

Id. at 516-517 (internal quotations and citations omitted). The court added that the prison system's own rules regarding grievances provide both inmates and the courts with more specific guidance and noted that because prisoners are generally required to follow the procedures adopted by the state prison system, the specificity requirement should be interpreted in light of the grievance rules of the particular prison system. Id. at 517.

In this case, petitioner explained why he was dissatisfied with the disciplinary hearing process in his grievances and made clear that he thought the evidence did not support a finding of guilt. Accordingly, the grievances were sufficient to give prison officials an opportunity to review the disciplinary hearing procedure to see whether it comported with due process. His claims regarding the sufficiency of the evidence to support the finding of guilt in his disciplinary hearing should be not be dismissed for failure to exhaust.

However, petitioner did not raise the issue of ineffective assistance of counsel substitute in his grievances and as it is too late to raise the issue now, he has waived it. Also, petitioner's final claim, that the officers placed inmates in a situation of "reckless endangerment" is a tort claim and cannot be addressed in this habeas action. If petitioner wishes to raise such a claim, he must exhaust his administrative remedies and pursue the claim by way of a 42 U.S.C. § 1983 cause of action.

**B.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)].  Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id.  (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  Sandin, 515 U.S. at 486, 115 S.Ct. at 2301.  The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody.  Id.

**(1) Time Earning Status**

To the extent petitioner seeks reinstatement of his line class, he has not raised a due process concern.  Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on the amount of time he is in custody.  Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests."  Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532,

2540, n. 8, 49 L.Ed.2d 451 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)). See also Malchi v. Thaler, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Accordingly, petitioner is not entitled to habeas corpus relief based on his line class status.

**(2) Loss of Good time**

Petitioner also seeks reinstatement of his lost good time. To the extent petitioner contends that the loss of good time affects his parole eligibility he fails to state a basis of relief. "In Texas, it is entirely speculative whether an inmate will actually obtain parole, inasmuch as there is no right to be released on parole. . . . In fact, we have expressly held that there is no constitutional expectancy of parole in Texas." Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997). Without such an expectation, petitioner is not entitled to due process following the loss of good time credits insofar as the loss affects his eligibility for parole.

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. Id., 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)). Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. TEX. GOV'T CODE ANN. §508.147 (Vernon 2002).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release. Malchi v. Thaler, 211 F.3d 953, 957-

7

958 (5th Cir. 2000)[3]. The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest. Hudson, 242 F.3d at 536, n. 1. However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does. Id. at 536. Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision. Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Some inmates are not eligible for release to mandatory supervision because of the nature of their offense. Petitioner was convicted of aggravated assault, a second degree felony, and so is ineligible for release to mandatory supervision (D.E. 1, p. 5; D.E. 8, Commitment Inquiry; TEX. GOV'T CODE ANN. § 508.149(a)(6)). Because petitioner is not eligible for mandatory supervision, he has no constitutional expectancy of early release and the Wolff due process considerations are not implicated. Madison, 104 F.3d at 769. Accordingly, he is not entitled to habeas corpus relief.

## C. Certificate of Appealability

The Supreme Court has stated that the showing necessary for a Certificate of Appealability ("COA") is a substantial showing of the denial of a constitutional right. Hernandez v. Johnson, 231 F.3d 243, 248 (5th Cir. 2000)(citing Slack v. McDaniel, 529 U.S. 473, 483-484 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues

---

[3] Accordingly, the loss of good time credits as the result of a disciplinary hearing implicates the higher levels of due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). (1) Written notice of the charges must be given to the inmate; (2) The inmate must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision. Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.

differently, or that the issues are suitable enough to deserve encouragement to proceed further. See Clark v. Johnson, 202 F.3d 760, 763 (5th Cir. 2000). Specifically, where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack, 529 U.S. at 484. A determination of the merits of a claim should not be part of the decision to issue a COA. Rather, it is the debatability of the underlying constitutional claim, rather than its resolution, that controls whether a COA should issue. Miller-El v. Cockrell, 537 U.S. 332, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

## RECOMMENDATION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (D.E. 7) be granted and petitioner's cause of action for habeas corpus relief be dismissed. It is further recommended that should petitioner seek a Certificate of Appealability, it be denied.

Respectfully submitted this 25th day of October, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).